COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-308-CR

 

 

JAMES CURNEL                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction








Appellant
James Curnel appeals his conviction for capital murder.  In three points, Curnel argues that the trial
court erred by not including an accomplice-witness instruction in the jury
charge, that his trial counsel was ineffective for not requesting an
accomplice-witness instruction in the jury charge, and that the trial court
erred by denying his motion for instructed verdict.  We will affirm.

II.  Factual and Procedural Background

Cavit
Sevenler owned a moving truck.  He and
his helper Walter Oriana picked up a load near Grand Prairie on January 11,
2007, and they parked the truck in a motel parking lot in Grand Prairie for the
night.  Sevenler was on his laptop
talking to one of his two young daughters when three black men approached his
truck and one asked to borrow a phone. 
Oriana told Sevenler to roll up the window because he Afelt
like something was going to happen.@  The men asked to borrow a phone again,
cussed, and then left.  Oriana went to
the sleeping compartment of the truck for the night.  Shortly thereafter, Oriana heard a gunshot
and heard Sevenler call for him.  Oriana
went to the front of the truck and saw that Sevenler had been shot.  He ran to the road and flagged down a police
officer.   

An
eyewitness told police that she had seen four black men leaving the scene in a
white Ford Taurus with license plate number H20 RLV.  Video surveillance from the motel showed
several men getting out of and back into a Ford Taurus in the parking lot.  The video did not capture the shooting.








The day
after the shooting, Detective Heath Wester, the detective assigned to the case,
received a call from an anonymous tipster giving him an address for a duplex in
Arlington.  Detective Wester, along with
three other detectives, went to the address. 
They found a white Ford Taurus with license plate number H20 RYV, one
digit different than the license plate number given by the eyewitness, parked
in the duplex=s parking lot.  Emanuel Phillips lived at the address given
to Detective Wester.  Phillips answered
the door and immediately began telling the detectives about the shooting,
without any questioning from the detectives. 
While talking to the detectives, Phillips saw Curnel and Chris Johnson
leaving the duplex next door, and he pointed out the two men to the detectives.  Johnson=s mother
owned the duplex next door to Phillips=s, and
Curnel had been staying there with Johnson. 

The
detectives arrested Phillips, Curnel, and Johnson.  Police found shotgun shells and a box of
ammunition under a mattress in Johnson=s
home.  They found paperwork belonging to
Johnson=s
cousin, Toborish Roberson, next to the mattress.  The police also arrested Roberson.   

Detective
Wester interviewed Johnson, Roberson, and Phillips, and all three men said that
Curnel was the shooter.  Johnson told
officers that the murder weapon, a shotgun belonging to Curnel, was hidden
inside a mattress in Johnson=s duplex.  Police obtained a search warrant and searched
Johnson=s home a
second time; they found a silver single-shot twelve-gauge shotgun inside a
mattress in Johnson=s bedroom, where Curnel and
Johnson slept.








Detective
Wester compiled two photospreads, one containing Johnson=s photo
and one containing Curnel=s photo.  Oriana identified both men from the
photospreads.  Curnel was indicted for
capital murder for shooting Sevenler Ain the
course of committing or attempting to commit the offense of robbery of Cavit
Sevenler.@ 








At
Curnel=s trial,
Phillips testified that he had been at Johnson=s duplex
on the day of the shooting watching the movie Killa Season with Johnson,
Curnel, and Roberson.  Johnson, Phillips,
and Roberson were smoking marijuana, although Phillips did not recall Curnel
smoking.  The four men decided to go
exchange Curnel=s shotgun for a pistol.  They took Phillips=s Ford
Taurus to meet another man at a motel to trade the guns.  The man was not at the motel so they decided
to drive around until he returned. 
Phillips explained at trial that they saw a man walking and decided to Ajack him@; when
they approached, the man started acting scared so they decided to leave.  They then drove to the motel where Sevenler=s truck
was parked and saw Sevenler in the cab with his laptop open.  Phillips testified that Curnel said, AThat=s a
lick,@ which
means an easy robbery or Afast cash.@  The men parked and tried to come up with a
plan to rob Sevenler.  Curnel, Roberson,
and Johnson walked up to the truck while Phillips stayed by the car; Curnel had
the shotgun.  Phillips had only taken a
few steps away from the car when he heard the gunshot, and everyone ran back to
the car.  Curnel said, AHe=s
dead.  He=s dead,@ and AI know
how to hit a lick, and that=s how
you do it in the movies.@ 
Phillips testified that he was originally arrested for capital murder in
connection with Sevenler=s death but that he agreed to
testify for the State in exchange for a ten-year sentence for aggravated
robbery. 








Johnson
also testified against Phillips in exchange for a twelve-year sentence for
aggravated robbery.  He testified that
Curnel had been staying with him for several months; they shared a bunkbed in
Johnson=s
room.  He testified that he, Curnel,
Phillips, and Roberson were watching Killa Season, smoking weed, and
talking about getting away with murder on the day of the incident.  They left to exchange Curnel=s shotgun
for a pistol, and while driving around, a man stopped them and asked if they
had any drugs.  They then saw Sevenler
inside his truck.  Curnel said it was Aa lick@; when
asked what Aa lick@ means,
Johnson testified that it could mean Anumerous
things@ and
that, in that particular situation, he Adidn=t think
of it meaning anything.@ 
He said that the Alast thing on [his] mind was
robbery.@  He explained that after they parked at the
motel, everyone but Phillips got out, AJames
shot the gun; we all left.@   Laurel Hall testified that she lives near
Johnson=s
duplex, that she has known Johnson since elementary school, and that she was
friends with Curnel. She testified that on the night that Sevenler was shot,
Curnel went to her house and told her that he had shot somebody.  A letter that Curnel wrote Hall while in jail
was also introduced at trial.  In the
letter, Curnel  wrote, AI dont
know if its true or not but word is lil Chris [Johnson] ain=t the
only sni[t]ch.@ 
Hall testified that she was upset because she thought Curnel was
suggesting that she Awas snitching@ even
though she had not talked to police. 
Additionally, Hall and Hall=s mother
both testified that when Curnel went to their house that night, he wanted to
watch Channel 4 news because Athey
pick up things real quick.@  

Curnel
called Aaron Russell to testify on his behalf. 
Russell testified that he and Curnel are friends and that he saw Curnel
on the night of Sevenler=s death.  Curnel was upset and told Russell that he
could not tell him the whole story but that Asomeone
was killed, and there was a robbery.@  Russell also testified that Johnson had told
him that Curnel was in jail for something he did not do.   

Scotty
Bryant also testified for the defense. 
He testified that he had been in jail with Johnson and that Johnson had
confided to him that he was the one who shot Sevenler Ajust to
prove that he could kill somebody.@    








The jury
convicted Curnel of capital murder. 
Acknowledging that the State had waived the death penalty, the trial
court sentenced Curnel to life in prison. 

III.  Jury Charge

In his
first point, Curnel argues that the trial court erred by failing to include an
accomplice-witness instruction in the jury charge.  Curnel acknowledges that his defense counsel
did not object to the exclusion of the accomplice-witness instruction, but he
argues that he suffered egregious harm as a result of the trial court=s error.


A. 
Standard of Review

Appellate
review of error in a jury charge involves a two-step process. Abdnor v.
State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); see Sakil v. State,
287 S.W.3d 23, 25B26 (Tex. Crim. App. 2009).  Initially, we must determine whether error
occurred.  If it did, we must then
evaluate whether sufficient harm resulted from the error to require
reversal.  Abdnor, 871 S.W.2d at
731B32.








If there
is error in the court=s charge but the appellant did
not preserve it at trial, we must decide whether the error was so egregious and
created such harm that the appellant did not have a fair and impartial trialCin
short, that Aegregious harm@ has
occurred.  Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g);
see Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Allen v. State,
253 S.W.3d 260, 264 (Tex. Crim. App. 2008); Hutch v. State, 922 S.W.2d
166, 171 (Tex. Crim. App. 1996). 
Egregious harm is the type and level of harm that affects the very basis
of the case, deprives the defendant of a valuable right, or vitally affects a
defensive theory.  Allen, 253
S.W.3d at 264 & n.15; Olivas v. State, 202 S.W.3d 137, 144, 149
(Tex. Crim. App. 2006); Almanza, 686 S.W.2d at 172.

In
making an egregious harm determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Almanza, 686 S.W.2d at 171; see
generally Hutch, 922 S.W.2d at 172B74.  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis.  Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002); Hutch, 922 S.W.2d at 171. 

 








B. 
Accomplice-Witness Instruction

Article
38.14 of the code of criminal of procedure provides, AA
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.@  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
2005).  A prosecution witness Awho is
indicted for a lesser included offense based upon alleged participation in
commission of the greater offense is also an accomplice as a matter of law.@  Ex parte Zepeda, 819 S.W.2d 874, 876
(Tex. Crim. App. 1991).  If a prosecution
witness is an accomplice as a matter of law, the trial court is under a duty to
instruct the jury accordingly, and failure to do so is error.  Herron v. State, 86 S.W.3d 621, 631
(Tex. Crim. App. 2002).

The
instruction does not require that the jury should be skeptical of
accomplice-witness testimony or give less weight to such testimony than to
other evidence.  Id.  The instruction merely informs the jury that
it cannot use the accomplice-witness testimony unless some non‑accomplice
evidence connects the defendant to the offense. 
Id.








The test
for sufficient corroboration is whether, after excluding the accomplice=s
testimony, other evidence of an incriminating character tends to connect the
defendant with the commission of the offense. 
Burks v. State, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994), cert.
denied, 513 U.S. 1114 (1995); Munoz v. State, 853 S.W.2d 558, 559
(Tex. Crim. App. 1993). Corroborating evidence need not directly connect the
defendant to the crime or be sufficient by itself to establish guilt; instead,
the combined weight of the corroborating evidence need only tend to connect the
defendant to the offense. Cathey v. State, 992 S.W.2d 460, 462 (Tex.
Crim. App. 1999), cert. denied, 528 U.S. 1082 (2000); McDuff v. State,
939 S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522 U.S. 844
(1997).  Additionally, the corroborative
evidence may be circumstantial or direct, and the accomplice testimony need not
be corroborated on every element of the offense.  Brosky v. State, 915 S.W.2d 120, 138
(Tex. App.CFort Worth, pet. ref=d), cert.
denied, 519 U.S. 1020 (1996).








Non‑accomplice
evidence can render harmless a failure to submit an accomplice-witness
instruction by fulfilling the purpose an accomplice-witness instruction is
designed to serve.   Herron, 86
S.W.3d at 632.  The omission of an
accomplice-witness instruction is generally harmless under the egregious harm
standard unless the corroborating non‑accomplice evidence is A>so
unconvincing in fact as to render the State=s
overall case for conviction clearly and significantly less persuasive.=@  Id. (quoting Saunders v. State,
817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).  


C.  No
Egregious Harm

Here,
Curnel was indicted for and convicted of capital murder for killing Sevenler in
the course of committing or attempting to commit robbery.  See Tex. Penal Code Ann. ' 19.03(a)(2)
(Vernon Supp. 2009).  Both Phillips and
Johnson testified that they had been indicted for aggravated robbery for their
participation in this crime; consequently, they were accomplices as a matter of
law, and the trial court erred by not including the accomplice-witness
instruction in the jury charge.  See
Zepeda, 819 S.W.2d at 876.  We must
consider whether Curnel suffered egregious harm as a result of this error.  See Herron, 86 S.W.3d at 631. 








The
non-accomplice evidence in this case consisted of (1) Oriana=s
identification of Curnel from a photospread and in court, (2) the videotape
showing four men in a Ford Taurus at the scene of the crime and an eyewitness=s report
of four black men at the scene in a white Ford Taurus, (3) the shotgun found in
the room where Curnel slept, (4) Hall=s
testimony that Curnel had told her that he shot someone, (5) Hall=s and
her mother=s testimony that Curnel had
wanted to watch Channel 8 news at their house after the shooting because Athey
pick up things real quick,@ (6)
Curnel=s letter
to Hall suggesting that someone else was a Asnitch,@ and (7)
Russell=s
testimony that Curnel had seemed nervous and had told him Asomeone
was killed, and there was a robbery.@ 

Curnel
does not dispute that non-accomplice evidence linked him to murdering Sevenler,
and the non-accomplice evidenceCincluding
his admission to Hall that he had shot someoneCcertainly
connects Curnel to Sevenler=s murder
and shows that he was the shooter.  See
id.  However, Curnel argues that no
non-accomplice evidence tends to connect him to robbery in the course of
a murder as required to establish his guilt for capital murder.  But the non-accomplice evidence need not
prove all the elements of the alleged offense or directly link Curnel to the
commission of the offense; rather, it is sufficient if it tended to connect him
to the offense.  See Cathey, 992
S.W.2d at 462; Brosky, 915 S.W.2d at 138.  Moreover, Russell=s
testimonyCthat Curnel had told him Asomeone
was killed, and there was a robbery@ does
connect Curnel with robbery.  








We hold
that the corroborating non‑accomplice evidence is not A>so
unconvincing in fact as to render the State=s
overall case for conviction clearly and significantly less persuasive.=@ Herron,
86 S.W.3d at 632 (quoting Saunders, 817 S.W.2d at 692).  Consequently, we hold that the trial court=s error
in failing to include an accomplice-witness instruction in the jury charge did
not result in egregious harm to Curnel such that he did not have a fair and
impartial trial.[2]
 See Tex. Code Crim. Proc. Ann.
art. 36.19; Allen, 253 S.W.3d at 264; Hutch, 922 S.W.2d at 171; Almanza,
686 S.W.2d at 171.  We overrule Curnel=s first
point.

IV.  Motion for
Instructed Verdict

In his
second point, Curnel argues that the trial court erred by denying his motion
for instructed verdict at the close of the State=s case
because no corroborative non-accomplice evidence existed to support the
accomplice-witness testimony that he was guilty of capital murder. 

 A challenge to the denial of a motion for
instructed verdict is actually a challenge to the legal sufficiency of the
evidence.  Canales v. State, 98
S.W.3d 690, 693 (Tex. Crim. App.), cert. denied, 540 U.S. 1051 (2003);  McCown v. State, 192 S.W.3d 158, 160
(Tex. App.CFort Worth 2006, pet. ref=d).  








In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

In this
case, Curnel is specifically challenging the legal sufficiency of the
non-accomplice evidence corroborating the accomplice-witness testimony that
Curnel, along with Phillips, Johnson, and Roberson, committed robbery or
attempted robbery.  As we explained in
addressing Curnel=s first point above, the
corroborating non-accomplice evidence sufficiently tended to connect Curnel to
the offense.  Curnel argues that we
cannot consider Russell=s testimony because he testified
during the defense=s case-in-chief, after Curnel
had moved for an instructed verdict.  However, our review of the evidence is not
limited to the evidence presented before Curnel=s motion
for instructed verdict, and we may consider Russell=s
testimony in our review.  See
Montgomery v. State, 198 S.W.3d 67, 85 (Tex. App.CFort
Worth 2006, pet. ref=d). 








Viewing
the evidence in the light most favorable to the prosecution, we hold that a
rational trier of fact could have found that Curnel committed robbery or
attempted to commit robbery and that the accomplice-witness testimony was
corroborated by Russell=s testimony.  Consequently, we hold that the evidence is
legally sufficient to support Curnel=s
conviction for capital murder and that, consequently, the trial court did not
err in refusing an instructed verdict for Curnel.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778.  We overrule Curnel=s second
point. 

V.  Effective Assistance of Counsel

In his
third point, Curnel argues that his trial counsel was ineffective because he
did not request an accomplice-witness instruction be included in the jury
charge. 








 We apply a two‑pronged test to
ineffective assistance of counsel claims. Strickland v. Washington, 466
U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163
S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59,
62B63 (Tex.
Crim. App. 2001); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim.
App. 1999); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).  To establish ineffective
assistance of counsel, an appellant must show by a preponderance of the
evidence that his counsel=s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064; Salinas, 163 S.W.3d at 740; Mallett, 65 S.W.3d at 62B63; Thompson,
9 S.W.3d at 812.  There is no requirement
that we approach the two-pronged inquiry of Strickland in any particular
order, or even address both components of the inquiry if the defendant makes an
insufficient showing on one component.  Strickland,
466 U.S. at 697, 104 S. Ct. at 2069 (1984).

The
second prong of Strickland requires a showing that counsel=s errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
with a reliable result.  Id. at
687, 104 S. Ct. at 2064.  In other words,
the appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been different. Id.
at 694, 104 S. Ct. at 2068.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Id. at 694, 104 S. Ct.
at 2068.  The ultimate focus of our
inquiry must be on the fundamental fairness of the proceeding in which the
result is being challenged.  Id.
at 697, 104 S. Ct. at 2070.








In Davis
v. State, the court of criminal appeals discussed the appropriate analysis
for an ineffective assistance claim in which defense counsel failed to request
an accomplice‑witness instruction. 
278 S.W.3d at 352B53.  The court held that the issue of prejudice Awill
generally turn on whether there was a substantial amount of non‑accomplice
evidence and whether the record reveals any rational basis on which the jury
could have doubted or disregarded that evidence.@  Id. at 353.

In this
case, we need not address whether, under the first Strickland prong,
Curnel=s
attorney was ineffective for not requesting an accomplice-witness instruction
because Curnel has not satisfied the second Strickland prong.  See Strickland, 466 U.S. at 697, 104
S. Ct. at 2069.  As we explained
above, the non-accomplice evidence, if believed, established that Curnel
admitted to Hall that he had killed someone and wrote her a letter suggesting
that someone Asnitch[ed],@ that
Oriana identified Curnel as one of the men who approached Sevenler=s truck
immediately before Sevenler was shot, that a videotape showed four men in a
Ford Taurus at the scene of the crime, that an eyewitness reported four black
men at the scene in a white Ford Taurus, that police found a shotgun in the
room where Curnel slept, that Curnel told Hall and her mother to turn the
television to Channel 8 because Athey
pick up things real quick,@ and
that Curnel nervously told Russell that someone was killed and there was a
robbery.  








As
detailed above, the record reflects a significant amount of non-accomplice
evidence that tended to connect Curnel to the offense committed. Furthermore,
the record reveals no rational basis on which the jury could have doubted or
disregarded that evidence.  See Davis,
278 S.W.3d at 352.   We find no
reasonable probability that, but for counsel=s
alleged deficient performance, the result of the guilt-innocence stage would
have been different.  See id. at
352B53.  Accordingly, we overrule Curnel=s third
point. 

VI.  Conclusion

Having
overruled Curnel=s three points, we affirm the
trial court=s judgment.

PER
CURIAM

PANEL: WALKER, LIVINGSTON, and
DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: January 28, 2010











[1]See Tex. R. App. P. 47.4.





[2]Curnel argues that we
should apply the harm analysis set forth in Davis v. State, 278 S.W.3d
346 (Tex. Crim. App. 2009), which applies to ineffective assistance
claims.  We decline to do so but note
that we apply Davis to Curnel=s third point below and find no harm under that
standard as well.